TURNER v. ST. CLAIR TUNNEL CO.

CONFLICT OF LAWS—TORTS—PERSONAL INJURIES.

The liability of a corporation engaged in constructing a tunnel under a river between Michigan and Ontario, and employing an overseer on each side, in an action for injuries to an employé alleged to have been due to its negligence in allowing him to enter upon work in compressed air on the Canadian side of the tunnel at a higher pressure than that to which he had been accustomed on the American side, without warning him of the increased danger, is to be determined by the laws of Canada, although the employé was sent to the Canadian side by direction of the American foreman.

Error to St. Clair; Vance, J. Submitted October 22, 1896. Decided February 18, 1897.

Case by David Turner against the St. Clair Tunnel Company for personal injuries. From a judgment for plaintiff, defendant brings error. Reversed.

*Geer & Williams* and *L. C. Stanley* (*E. W. Meddaugh*, of counsel), for appellant:

The negligent act, if any, was done in Ontario, Canada. The rights of the parties are governed, therefore, by the law of Ontario. Story, Conf. L. (7th Ed.) § 307*d*; *Rafael* v. *Verelst*, 2 W. Bl. 1055; *Mostyn* v. *Fabrigas*, 1 Cowp. 161; *Whitford* v. *Railroad Co.*, 23 N. Y. 471; *Crowley* v. *Railroad Co.*, 30 Barb. 99; *Beach* v. *Steamboat Co.*, Id. 433; *Bridger* v. *Railroad Co.*, 27 S. C. 456; *Knight* v. *Railroad Co.*, 108 Pa. St. 250; *Railroad Co.* v. *Moore*, 29 Kan. 632; *Herrick* v. *Railway Co.*, 31 Minn. 11; *Smith* v. *Condry*, 1 How. 28. And what the law is, is a question of law for the court. Rog. Exp. Test. § 99; 1 Greenl. Ev. § 486; Story, Conf. L. § 638; *Kline* v. *Baker*, 99 Mass. 253; *Ely* v. *James*, 123 Mass. 36; *Railway Co.* v. *Tuite*, 44 Ill. App. 535. It is a matter of justice to the parties to decide the case by the law of the place of injury. *Wingert*

v. *Circuit Judge*, 101 Mich. 395; *Boyd* v. *Clark*, 8 Fed. Rep. 849. By the law of Ontario, plaintiff has no right of action. *McFarlane* v. *Gilmour*, 5 Ont. 302; *Rudd* v. *Bell*, 13 Ont. 47; *Matthews* v. *Powder Co.*, 14 Ont. App. 261, 12 Ont. 58; *Allen* v. *New Gas Co.*, L. R. 1 Exch. Div. 251; *Wilson* v. *Merry*, L. R. 1 H. L. Sc. 326; *Howells* v. *Steel Co.*, L. R. 10 Q. B. 62.

*Chadwick & McIlwain*, for appellee.

HOOKER, J.   The defendant is a corporation, and was engaged in constructing a tunnel under the St. Clair river between Ft. Gratiot, Mich.; and Port Sarnia, Ontario. Compressed air was used to prevent caving, access to the tunnel being had through an air lock, in which the air was made to correspond in density with that in the tunnel, or with that of the atmosphere outside, by the use of valves.   Letting air into the lock from the tunnel accomplished the former, and allowing it to escape outside from the lock effected the latter.   It was known by defendant that those who entered the tunnel experienced an inequality of air pressure, which, for a time at least, caused an unpleasant pressure from the outside upon the eardrums, and perhaps a similar pressure from within upon going out.   It was also known that after going out some persons were attacked with violent pains in the members and joints, which, among the men, at least, went by the name of "the bends."   It is, perhaps, not improper to say that these were more common among beginners in work in compressed air, and that it was generally understood that they might be avoided, or at least that the danger of their occurring might be greatly lessened, by changing the pressure gradually and slowly in the lock. It was shown that the practice of the company was to require an examination by a surgeon of the men employed, to ascertain that they were in a proper physical condition to make it prudent for them to work in compressed air.   This tunnel was constructed by starting a drift from each side of the stream, and each

had its overseer or superintendent, though both were under one management. Mr. Hobson was chief engineer, Murphy had charge of the excavation, and Eames was in charge of the mechanical work and the working of the machinery. Minto was assistant to Eames, and looked after work at the Canadian end. Hushin was employed by Eames as mechanical foreman on the Michigan side. The plaintiff was employed by Hushin, and first worked outside as a laborer, but was desirous of getting a job where he could draw more pay, which seems to have been understood to mean that he applied for work inside, and he was finally given such work, and worked a day, or perhaps two, before the occurrence which gave rise to this action. After the plaintiff commenced work in compressed air, he and three or four others were requested or directed by Hushin to go to the Canadian side to work, and to report to Minto, which they did, and they were set at work in the tunnel, where, after working eight hours, they were persuaded by the overseer in charge to remain for another shift of eight hours. At the end of that time they came out through the lock. They started for the Michigan side, but, before getting across the river, the plaintiff was attacked by "the bends," and had to go home. He became unconscious, and when he recovered consciousness he found that he had lost his hearing altogether. There was testimony from experts tending to show that they had many patients whose ears were temporarily affected by work in compressed air, but it is claimed that it was shown that, up to the time of plaintiff's experience, no case of total deafness or permanent injury to the ears had fallen within the observation of the defendant or any of the witnesses. This action was brought, charging the defendant with negligence, and plaintiff recovered a verdict and judgment, which the defendant has brought to this court by writ of error.

There was evidence tending to show that, shortly before the plaintiff was ordered to go to the Canadian side, some difficulty had occurred there, owing to a stratum or pocket

of loose soil, which threatened to cave and let the water into the tunnel, which would have been a serious damage, if it had not made abandonment of the enterprise necessary; that, to prevent it, the air pressure had been increased, and that, owing to a reluctance to work under such pressure, most of the men had quit work, and it was difficult to secure others to take their places. Whether this was from fear of injury from work in the air, or from a lack of faith in the efficacy of the air, and a fear that the water would get in and drown them, is perhaps not altogether clear; but, at all events, men were needed, and were sent from the Michigan side. The plaintiff testified that he told Hushin that he did not want to go, because he had heard that they were working over there in a pressure of 28 pounds, and that the men agreed that they would not work in that pressure, and that Hushin denied it, saying there was only 19 or 20 pounds, and said: "Go over there, and stay until 8 in the morning, and that won't hurt anybody, and come out and bring a good record back;" that, upon that assurance, they went. There was testimony tending to show that the pressure carried that night was from 26 to 28 pounds, and Hushin testified that he knew it was 26 pounds when he sent the men over. The plaintiff also testified that he informed Hushin that he was fatigued, and needed sleep, and that Hushin replied that he could sleep tomorrow. It also appeared that the men went in at 4 o'clock, and at 12 they prepared to go out, but, on solicitation of the overseer in charge of the work inside, who said he would be without men if they did not stay, and that it would not hurt them to stay until morning, they remained. There was testimony that they were from one and a half to five minutes in going through the lock.

The court instructed the jury that—

"Fearing that I may not have made it sufficiently specific, I desire again to repeat the proposition to you that this plaintiff cannot recover, unless he shows, by a fair

preponderance of evidence, to your satisfaction, (1) that the use of compressed air in the manner in which it was used on the Canadian side was dangerous; (2) that the defendant knew it when it directed Turner to go to work, or that it should have known it by the exercise of reasonable care and caution through its officers, superintendents, and foremen; (3) that Turner was ignorant of the danger; (4) that the danger was latent, or, in other words, concealed and hidden; (5) that the plaintiff did not know of this concealed or hidden danger; (6) that he was not cautioned by the tunnel company, or its officers or foremen, who employed him, of this danger, and that he did not know it from any other source; and (7) that his injury was caused by working in compressed air, and that while he was doing that he was in the exercise of due care and caution. Each one of these, I repeat, must be proven to your satisfaction before the plaintiff can recover."

It is contended by the defendant:

1. That this injury to the plaintiff was not to have been anticipated, reasonably, so as to lay a duty on defendant to avoid it by warning him. There was no latent danger which the defendant knew, or ought to have known.

2. That the acts of Hushin and Minto and the overseer in the tunnel were the acts of fellow-servants.

3. That the defendant was not obliged to make the place of labor safe, under the rule laid down in *Beesley* v. *F. W. Wheeler & Co.*, 103 Mich. 196, and *Petaja* v. *Mining Co.*, 106 Mich. 463.

4. That the work was voluntarily performed in Canada, and that the case is governed by the law of the province, which does not permit a recovery.

At the threshold of the case lies the fourth question mentioned, because, if it is true that under the law of Canada there could be no recovery, it is the end of the case, unless it can be said that the law of Michigan governs. In support of their contention counsel for the defendant cite a number of cases where wrongs were perpetrated in foreign states; such wrongs as assaults and batteries, malicious arrests and prosecutions, and false imprisonment, injuries to passengers and employés on railroads, etc. In all of these cases the rule is said to

be that the action for the wrong is transitory, but that the right of recovery depends upon the law of the place where the tort is committed. In this case the alleged wrong consisted in allowing the plaintiff to enter upon a dangerous work, in ignorance of dangers known, or which it is said the defendant should have known, whereby the plaintiff was injured. This occurred in Canada, and we are of the opinion that the case falls within the authorities mentioned, which will be found cited in the briefs of counsel. Counsel for the plaintiff claim that the breach of duty occurred in the United States, by the defendant falsely assuring the plaintiff that the employment was safe. Continuing, they say:

"There are two elements necessary to constitute liability for negligence, viz., *wrong* and *injury*. Neither, alone, is sufficient. While it is true that negligence without injury gives no right of action, it is equally true that injury without negligence gives no right of action. The action is based on negligence. Negligence is simply a neglect of duty. That neglect of duty constitutes the 'wrong' which gives the right of action, which is founded upon the application of the general principle of law that 'where there is fault there is liability.' The breach of duty, the fault, and wrong were all on the American side. Upon these plaintiff's right of action is founded. The injury is but the result of the breach, the fault, and the wrong. The injury alone created no liability. It is defendant's connection with, and responsibility for, the injury which makes it liable, and that responsibility was fixed upon defendant when it gave the wrongful order which resulted in the injury. None of the cases cited by defendant are authority for the case at bar. They do not contain the initial wrong by the master to the servant injured which creates the right of action, viz., the deceit and wrongful order. They are all cases where the tort was committed in some foreign country or state. In this case the tort was committed on the American side, and committed by the master."

If it is true, as counsel concede, that the liability rests upon the concurrence of an injury and a neglect of duty,

without which neglect the injury would not have occurred, the tort cannot be said to have been committed in Michigan, and it can be said to have been done in Canada, where the dangerous service began when the plaintiff entered the dangerous place without warning, and which warning up to that time might have been given by the master or any other person. If, before he incurred the risk, knowledge of the danger came to the plaintiff in any way, or from any source, there would have been no actionable wrong. Counsel have not cited an authority for the position taken, and we think, as already stated, that the law of the place of the injury as to the duty of the master must apply. See *Wingert* v. *Wayne Circuit Judge*, 101 Mich. 395; 3 Suth. Dam. § 1280. The trial court reached a different conclusion upon this troublesome question, and we are constrained to hold that therein he erred. The importance of this ruling is seen in the following statement of the question involved: For plaintiff it was asserted that it was the duty of the master to warn the plaintiff that an increased and higher pressure was maintained in the Canadian than in the Michigan tunnel, where the plaintiff had worked, and that this increased the danger; also that it was dangerous to work for twice the usual time in this high pressure, and that greater deliberation in passing the lock in such case was necessary to safety. If the Michigan rule was to be applied, giving notice of the danger was a duty of the master, which he could not escape by authorizing a representative to perform it; while, if the Canadian rule governed, it was claimed that the master might safely leave that to a competent foreman, his duty being discharged by the exercise of due care in the selection and employment of such foreman. From the evidence offered, such would seem to be the law in Canada, and the injury to the defendant's case by the ruling is manifest.

We think it unnecessary to discuss the large number of questions raised by this record, most of which turn upon

legal principles repeatedly considered by us, and upon which we see no reason for anticipating difficulty upon another trial.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.