SEVERINE v FORD AEROSPACE & COMMUNICATIONS
CORPORATION

Docket No. 57943. Submitted May 18, 1982, at Detroit.—Decided
August 24, 1982.

Plaintiff, Michael J. Severine, was employed by the Philco Corpo-
ration in Pennsylvania from 1944 until the company was
acquired by defendant, Ford Aerospace & Communications
Corporation, a wholly owned subsidiary of Ford Motor Com-
pany, in 1961. Plaintiff continued to work for defendant until
1977, when he was granted a special retirement. Plaintiff
brought an action in the Wayne Circuit Court alleging age
discrimination in violation of the Elliott-Larsen Civil Rights
Act. The trial court, Theodore R. Bohn, J., granted accelerated
judgment for defendant, holding that Michigan law did not
apply even if the decision to discriminate was made by defen-
dant in Michigan. Plaintiff appealed. *Held:*

Where more than one state has sufficient contact with the
subject matter of litigation, the forum state to litigation may
constitutionally apply the law of either state having an interest
in the subject activity. There are sufficient contacts in this case
that the application of Michigan law would not be precluded by
the Due Process and Full Faith and Credit Clauses of the
United States Constitution. However, plaintiff's action is in the
nature of a tort action and, where an action in one state causes
injury in another state, the second state is the situs of the tort
for choice-of-law purposes. Therefore, under Michigan choice-of-
law principles, Pennsylvania law controls.

· Affirmed.

1. CONSTITUTIONAL LAW — CHOICE OF LAWS.

Where more than one state has sufficient contact with the subject
matter of litigation, the forum state to litigation may constitu-
tionally apply the law of either state having an interest in the

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 16 Am Jur 2d, Conflict of Laws §§ 103, 107.

Modern status of rule that substantive rights of parties to a tort
action are governed by the law of the place of the wrong. 29
ALR3d 603.

subject activity; limitations on a state's choice-of-law doctrine come from the Due Process and Full Faith and Credit Clauses of the United States Constitution.

2. CONFLICT OF LAWS — EMPLOYMENT DISCRIMINATION.

An action alleging employment discrimination in another state is in the nature of a tort action and, under Michigan law, the substantive law of the state where the harm occurred governs the action.

*Donnelly & Associates, P.C.* (by *George D. Wahl),* for plaintiff.

*Jill MacDonald, Jerome R. Drouillard* and *Kermit G. Bailer,* for defendant.

Before: M. F. CAVANAGH, P.J., and N. J. KAUFMAN and R. A. BENSON,* JJ.

N. J. KAUFMAN, J. Plaintiff was employed in Pennsylvania by the Philco Corporation from 1944 until the company was acquired in 1961 by Ford Aerospace & Communications Corporation, a wholly owned subsidiary of Ford Motor Company. Plaintiff continued to work for Ford Aerospace until June of 1977, when he was granted a special retirement. During 1977, Ford Aerospace sold portions of its operations and granted some 1,200 persons similar special retirements.

Plaintiff commenced the present wrongful discharge action in November of 1977. Following a partial voluntary dismissal, plaintiff's sole claim against defendant is that the company violated the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.,* by refusing to offer him a transfer to a similar position of employment. Plaintiff contends that the company offered such transfers to younger employees and, there-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

fore, discriminated against him on the basis of his age. At the time of his special retirement plaintiff was 54 years old.

Defendant moved for accelerated or summary judgment, arguing that the Elliott-Larsen Civil Rights Act did not apply to plaintiff's claim inasmuch as plaintiff resided and was employed in Pennsylvania. The trial court agreed, despite plaintiff's claim that the decision to discriminate was made by defendant within the State of Michigan. The court reasoned that the civil rights statute was designed to protect only Michigan residents and simply did not apply to plaintiff's circumstances. Plaintiff appeals as of right.

Plaintiff contends on appeal that under Michigan choice-of-law principles the Elliott-Larsen Civil Rights Act is applicable to the allegations stated in his complaint. Defendant urges that the act may not be given effect beyond the state's territorial boundaries.

The general rule, often repeated in Michigan case law, is that the laws of one state do not, of their own force, have effect beyond the limits of that state. *Bostrom v Jennings,* 326 Mich 146, 154; 40 NW2d 97 (1949); *Keehn v Charles J Rogers, Inc,* 311 Mich 416, 425; 18 NW2d 877 (1945); *Henkel v Henkel,* 282 Mich 473, 485-486; 276 NW 522 (1937). However, the truism stated by the rule no longer reflects a strict prohibition on the application of state law to causes of action with multistate contacts. *Sexton v Ryder Truck Rental, Inc,* 413 Mich 406; 320 NW2d 843 (1982). It is now recognized that a state may have the power to legislate concerning the rights and obligations of its citizens with regard to transactions occurring beyond its boundaries. *Id.;* 73 Am Jur 2d, Statutes, § 357, p 491. Actual direct limitations on a state's

choice-of-law doctrine are rooted in the Due Process Clause[1] and Full Faith and Credit Clause[2] of the United States Constitution. See *e.g.*, Martin, *Constitutional Limitations on Choice of Law,* 61 Cornell L Rev 185 (1976). The United States Supreme Court has rejected a "single proper law" approach to conlict-of-laws problems and has conceded that, where more than one state has sufficient contact with the subject matter of litigation, the forum state to litigation may constitutionally apply the law of either state having an interest in the subject activity. *Richards v United States,* 369 US 1; 82 S Ct 585; 7 L Ed 2d 492 (1962); *Watson v Employers Liability Assurance Corp, Ltd,* 348 US 66, 72-73; 75 S Ct 166; 99 L Ed 74 (1954). See, generally, Leflar, American Conflicts Law, § 56, pp 121-125 (rev ed, 1968). Thus, a forum state will be prohibited from applying its own law to a controversy only where it has no significant contacts to the subject activity. *Clay v Sun Ins Office, Ltd,* 377 US 179; 84 S Ct 1197; 12 L Ed 2d 229 (1964); *Home Ins Co v Dick,* 281 US 397; 50 S Ct 338; 74 L Ed 926 (1930).

Most recently, in *Allstate Ins Co v Hague,* 449 US 302; 101 S Ct 633; 66 L Ed 2d 521 (1981), *reh den* 450 US 971; 101 S Ct 1494; 67 L Ed 2d 623 (1981), the Supreme Court upheld the State of Minnesota's application of its own law to a controversy arising out of a Wisconsin auto accident and having minimal apparent contacts to Minnesota. In *Allstate,* the plaintiff's husband was fatally injured when a motorcycle on which he was a passenger was involved in an accident with an automobile in Wisconsin. The decedent and the operators of both vehicles were Wisconsin resi-

---

[1] US Const, Am XIV.

[2] US Const, art IV, § 1.

dents, although the decedent was employed in Minnesota. Neither of the vehicle operators carried valid insurance. However, the decedent held a policy issued by Allstate in Wisconsin covering his three automobiles and protecting from risks involving uninsured motorists, to a maximum of $15,000 per vehicle. Subsequent to the accident, the plaintiff moved to Minnesota and was appointed in that state as personal representative of the decedent's estate. She then commenced a declaratory judgment action in Minnesota, seeking a declaration that the uninsured motorist coverage for the three automobiles could be "stacked" to provide a total coverage limit of $45,000. Although "stacking" was permitted under Minnesota law, it was prohibited under Wisconsin law. The Minnesota courts, applying Minnesota choice-of-law principles, refused to utilize Wisconsin law as being contrary to Minnesota public policy. On certiorari, the Supreme Court concluded that the choice of law did not violate either the Full Faith and Credit Clause or the Due Process Clause.

Justice Brennan, in a plurality opinion joined by three other members of the Court, considered the Minnesota contacts with the litigation sufficient to permit application of its law. Justice Brennan wrote that "for a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair". *Id.*, 312-313. The plurality looked to the aggregate of three Minnesota contacts with the parties and litigation. First, the plurality considered the fact that the decedent was employed in and commuted to Minnesota as providing the state with an interest in

protecting him and providing for the vindication of the rights of his estate. *Id.,* 313-317. Second, the plurality noted that, because the insurer had at all times been doing business in Minnesota, it could not claim unfamiliarity with Minnesota law. Moreover, the insurer's presence was seen as providing the state with an interest in the company's obligations as they related to plaintiff, a Minnesota resident and representative of the estate of a member of the Minnesota work force. *Id.,* 317-318. Third, the plurality considered Minnesota to have an interest in full compensation for the plaintiff, inasmuch as she was a Minnesota resident. *Id.,* 318-319. The plurality viewed the aggregate of the three contacts as significant, creating state interests, so that the application of Minnesota law was neither arbitrary nor fundamentally unfair and within the confines of the Due Process Clause and the Full Faith and Credit Clause. *Id.,* 320.

In a concurring opinion, Justice Stevens analyzed separately the application of the Full Faith and Credit and Due Process Clauses. According to Justice Stevens, the choice of Minnesota law did not implicate the Full Faith and Credit Clause since the choice did not threaten national unity or Wisconsin's sovereignty by unjustifiably infringing on Wisconsin's legitimate interests. Justice Stevens also concluded that due process was not violated since the choice of law did not frustrate the reasonable expectations of the parties to the insurance contract and did not work any fundamental unfairness. *Id.,* 320-332 (Stevens, J., *concurring).* Justice Powell, whose dissent was joined by two other members of the Court,[3] agreed with the plurality that a forum's choice of its own law

---

[3] Justice Stewart took no part in the *Allstate Ins Co v Hague* decision. 449 US 302, 320.

should only be invalidated when there are no significant contacts between the state and the litigation. However, Justice Powell viewed the contacts the plurality perceived as significant in the aggregate as being trivial. *Id.,* 332-340 (Powell, J., *dissenting).*

In applying the various analyses of the *Allstate* decision to the instant case, we conclude that, *if Michigan choice-of-law principles directed the use of Michigan law,* neither the Full Faith and Credit Clause nor the Due Process Clause would be offended. Here, two contacts with the state are of significance. First, it is apparent that defendant has at all time conducted business within the State of Michigan. Second, plaintiff alleges that the actual discriminatory employment decision was made within this state. Defendant cannot claim to be unfamiliar with the operation of the Elliott-Larsen Civil Rights Act or to be surprised at the possibility that forum law might be applied. *Allstate Ins Co v Hague, supra,* 317-318. Moreover, the state can be said to have an interest in the conduct of business within its boundaries, and, in particular, in prohibiting discriminatory decisions made within the state by state employers. Further, a decision to utilize Michigan law would not constitute a threat to national unity or to the sovereignty of Pennsylvania. Pennsylvania, like Michigan, has a policy against employment discrimination based upon age, as reflected in the state's Human Relations Act, 43 Pa Stat Ann § 955 (Purdon). Finally, the application of Michigan law to effectively preclude age discrimination can hardly be termed fundamentally unfair to either litigant. *Id.,* 320-332 (Stevens, J., *concurring).* Based upon these constitutional considerations, we cannot say, as defendant contends, that Michigan courts would

be absolutely precluded from applying Michigan law to the instant litigation. Nevertheless, our analysis of pertinent Michigan choice-of-law rules convinces us that Michigan law should not be applied.

Initially, we note that plaintiff's claim of employment discrimination is in the nature of a tort action. *Cf. Stimson v Michigan Bell Telephone Co,* 77 Mich App 361, 366; 258 NW2d 227 (1977). Michigan law has traditionally applied the doctrine of *lex loci delicti* to tort actions, utilizing the substantive law of the jurisdiction where the tort occurred. *Abendschein v Farrell,* 382 Mich 510; 170 NW2d 137 (1969). Recently, however, in *Sexton v Ryder Truck Rental, Inc, supra,* the Supreme Court has cast doubt upon the continued viability of the *lex loci* rule. In *Sexton,* five justices, in three separate opinions, effectively held that, in tort actions arising from out-of-state aircraft or motor vehicle accidents, Michigan courts will apply *lex fori* so long as the parties are Michigan residents or corporations doing business in Michigan. Three of the justices would apply forum law without regard to whether all of the parties were Michigan residents absent a compelling reason to apply the law of another jurisdiction. *Id.,* (KAVANAGH, J., *concurring;* LEVIN, J., *concurring).* The Court declined to adopt any alternative choice-of-law methodology. However, the holding of the case was specifically limited to personal injury and property damage actions. Judge LEVIN, in his concurring opinion, emphasized that choice of law in other fields was to continue to be governed by prior precedents. *Id.* (LEVIN, J., *concurring).* Therefore, since we do not perceive plaintiff's employment discrimination claim as one for personal injury or property damage, we continue to apply the *lex loci delicti* in this instance.

The instant case concerns a multistate occurrence. Plaintiff alleges that the decision to discriminate was made within Michigan. However, the impact of any decision was felt only in the State of Pennsylvania, where plaintiff was offered an early retirement instead of a possible job transfer. Where an action in one state results in a harmful effect in a second, the second state is controlling as the place of the tort for choice-of-law purposes. *McVickers v Chesapeake & Ohio R Co,* 194 F Supp 848 (ED Mich, 1961). See, generally, Leflar, American Conflicts Law, § 132, pp 319-320 (rev ed, 1968). Here, the harmful effect or injury occurred in Pennsylvania, when plaintiff, unlike other members of the Pennsylvania work force, was denied an offer of transferred employment. Consequently, under Michigan choice-of-law principles as we perceive them, the substantive law of Pennsylvania must govern any cause of action based upon defendant's alleged tortious conduct.

Plaintiff. has not pled a cause of action under Pennsylvania law but has limited the pertinent count of his complaint to the Michigan Elliott-Larsen Civil Rights Act. Since that act has no application to the circumstances of this case, plaintiff has failed to state a valid cause of action. The trial court's grant of summary judgment was appropriate. Our holding in this matter, however, is without prejudice to any claim plaintiff may yet have under Pennsylvania law.

Affirmed.