### PETRUSHA *v.* KORINEK.

1. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTIONS FOR JURY. In an action for the alleged negligent killing of plaintiff's decedent, who was struck by defendant's taxicab, testimony as to defendants' negligence and decedent's contributory negligence, *held*, sufficient to carry those questions to the jury.

2. DEATH—SURVIVAL OF CAUSE OF ACTION GOVERNED BY LEX LOCI DELICTI. Whether a cause of action survives and may be brought after death of the injured party depends upon the law of the jurisdiction in which the cause of death was inflicted, regardless of where death took place.

3. SAME—CAUSE OF ACTION ARISES IN STATE WHERE INJURY RECEIVED ALTHOUGH DEATH OCCUR IN ANOTHER STATE. If injury occurs in one State, and death results therefrom in another, the cause of action is regarded as having arisen in the former State, and is therefore governed by its laws.

4. SAME—CONFLICT OF LAWS—SURVIVAL ACT—LAW APPLICABLE. Where plaintiff's decedent received his injury in Wiscon-

[1]Motor Vehicles, 28 Cyc. p. 49; [2]Death, 17 C. J. § 105; [3]Id., 17 C. J. § 105; [4]Id., 17 C. J. § 105; 56 L. R. A. 193; 8 R. C. L. 736 *et seq.;* 2 R. C. L. Supp. 648.

sin, but died in Michigan, in an action therefor under the survival act the statute of Wisconsin is applicable, and the trial court was therefore in error in instructing the jury along the lines of the Michigan statute on that subject.

Error to Gogebic; Driscoll (George O.), J. Submitted October 7, 1926. (Docket No. 40.) Decided April 1, 1927. Rehearing denied June 6, 1927.

Case by Mary Petrusha, administratrix of the estate of Michael Harrington, deceased, against John M. Korinek and J. F. Sullivan, copartners as the De Luxe Cab Company, for the alleged negligent killing of plaintiff's decedent. Judgment for plaintiff. Defendants bring error. Reversed.

*Charles M. Humphrey, E. W. MacPherran,* and *Ivan D. Wright,* for appellants.

*Edward W. Massie,* for appellee.

STEERE, J. Plaintiff had judgment in the above entitled case in the circuit court of Gogebic county in the sum of $3,416 as damages for the wrongful death of her intestate, imputed to the negligence of defendants. The accident which resulted in deceased's death occurred in the county of Iron, Wisconsin, at a small location called Cary, located a short distance west of the city of Hurley, Wisconsin, which is close to the west boundary line of Michigan and directly across the Montreal river from the city of Ironwood, Michigan, the two being connected by a highway bridge over the river. Highway No. 77 of Wisconsin extends westerly from Hurley through Cary location, from where it is straight for half a mile or more east and a considerable distance west. At Cary the traveled portion of the highway is 30 feet wide with a cement sidewalk along its south side, and an interurban

electric line along its north side. Cary is a regular stopping place for the interurban line. At its stopping station there is a platform on the north side of the railway track, but passengers customarily took and left the car from the south side at the edge of the highway.

Defendants are partners located and doing business in the city of Ironwood, Michigan, under the name of the De Luxe Cab Company. Michael Harrington, deceased, was also a resident of Ironwood. At the time of his death he was 31 years of age, a common laborer, unmarried, with no dependents so far as shown. His only disclosed relatives were his sister, Mary Petrusha, and an adult brother, Daniel Harrington.

On the evening of April 21, 1925, deceased went with a companion named Carl Edwall to the Cary location where they remained until about 11 o'clock, when they started for the interurban station to take a car back to Ironwood. In doing so they walked for a distance along the cement walk on the south side of the highway until opposite the station and turning to the north on the highway looked for lights east and west. They saw nothing to the east but observed the headlight of the approaching street car they were about to take a short distance to the west, and crossed the highway to the south side of the railway track where they stopped and stood waiting for it to stop. It was then but a short distance away. As they stood there a rapidly driven taxicab belonging to defendants and carrying passengers came from the east and struck the two men down. The taxicab driver was shown to have defective vision, one eye being blinded by a traumatic cataract. Edwall, though severely injured, survived. Harrington was mortally injured. He was soon taken in a cab back to the Twin City Hospital in Ironwood, Michigan, arriving there in a dying condition not long before 12 o'clock.

His death occurred about 4 o'clock on the morning of April 22, 1925.    There was testimony that for a portion of the time at least he was conscious and made exclamations of pain and suffering.

One of defendants' assignments of error is denial of a motion to direct a verdict for them on the ground that no actionable negligence on the part of the taxicab driver was shown and if so deceased was guilty of contributory negligence.    We are of opinion there was sufficient testimony to carry those questions to the jury.

The more serious question is the ruling of the court that the *lex fori* rather than the *lex loci* obtained on trial of the cause, the court saying in reply to the argument of defendants' counsel:

"If he had a cause of action in Wisconsin it was a transferred cause of action; he brought that over into Michigan.    He died in Michigan, and by virtue of the Michigan statute that cause of action survived to his personal representative."

The court thereafter guided the trial and instructed the jury along the lines of our Michigan statutes on that subject, including the measure of damages under our so-called survival act.

As to the pleadings, this action was begun by a special administrator of deceased, under a declaration containing two counts, one based on the death act and the other on the survival act of this State, pleading in them certain provisions of the Wisconsin motor vehicle laws and penalties for their violation.    To them defendants pleaded the general issue.    Plaintiff as general administratrix of deceased was substituted for the special administrator and an amended declaration was filed.    It was substantially the same as the first, including the rather lengthy quotations from the Wisconsin motor vehicle law but omitting to count on the death act; plaintiff planting her claim on the sur-

vival act.   To this defendants pleaded the general issue with special notice that on the trial they would give in evidence, and insist upon in their defense, sections 4255 and 4256 of the general statutes of Wisconsin, quoted at length.   Proof of these was tendered at the trial, but plaintiff's objection to their admission was sustained.

The two sections of the Wisconsin statutes pleaded by defendants, cited as 2 Wis. Stat. 1921, §§ 4255 and 4256 (now appearing in 1 Wis. Stat. 1925, p. 2218, as 331.03 and 331.04), so far as material here, are:

"Recovery for death by wrongful act.   SECTION 4255.   Whenever the death of a person shall be caused by a wrongful act, neglect or default and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who, or the corporation which, would have been liable, if death had not ensued, shall be liable to an action for damages notwithstanding the death of the person injured; provided, that such action shall be brought for a death caused in this State.

"Who to bring action; damages limited.   SECTION 4256.   Every such action shall be brought by and in the name of the personal representative of such deceased person, and the amount recovered shall belong and be paid over to the husband or widow of such deceased person, if such relative survive him or her; but if no husband or widow survive the deceased the amount recovered shall be paid over to his or her lineal descendants and to his or her lineal ancestors in default of such descendants, but if no husband, or widow, or lineal descendant, or ancestor survive the deceased, the amount recovered shall be paid over to the brothers and sisters; and in every such action the jury may give such damages, not exceeding ten thousand dollars, as they may deem fair and just in reference to the pecuniary injury, resulting from such death to the relatives of the deceased specified in this section."   *   *   *

These identical provisions of the statute will be found exhaustively treated and construed in connection with section 4253 (what actions survive) as interpreted in *Lehmann* v. *Farwell*, 95 Wis. 185 (70 N. W. 170), by Justice Marshall in *Brown* v. *Railway Co.*, 102 Wis. 137, 142, 171 (77 N. W. 748; 78 N. W. 771), in which it is said:

"They (survival and death acts) refer to entirely distinct losses recoverable in different rights,—the one in the right of the deceased for the loss occasioned to him; the other in the right of the surviving relatives for the loss to them.    Both are dependent on the injury, but only one dependent on the death with surviving relatives to take under the statute.    *    *    *
"The imagined menace of a double recovery in the situation as we find it, does not exist in fact, as the damages in one right are limited to the loss which accrues to the injured person before death, and the damages in the other to the pecuniary loss of surviving relatives, as before the survival statute."

So construed, and as applied to the facts in this case, if any survival action were brought in Wisconsin, the recovery would seem to be limited to compensation for conscious suffering, loss of wages, etc., from the time of the accident until death, at which time damages to the estate must stop; and for his wrongful death recovery, if any, would be for the pecuniary loss of designated surviving relatives, who, so far as disclosed in this case, are an adult brother and sister who have not shown any pecuniary loss.    Under our survival act damages to the estate do not stop with death.

No wrong or injury whatever was done deceased by defendants in Michigan.    Had he lived to prosecute defendants in person for the alleged tort his right of action and amount of recovery would be governed by the law of Wisconsin.    *Turner* v. *St. Clair Tunnel Co.*, 111 Mich. 578 (36 L. R. A. 134, 66 Am. St. Rep. 397).

Plaintiff cites *Austin's Admr.* v. *Railway Co.*, 122

Ky. 304 (91 S. W. 742) and *Baltimore & Ohio R. Co.*
v. *Joy,* 173 U. S. 226 (19 Sup. Ct. 387), in support
of the theory that although the entire cause of de-
ceased's death arose in Wisconsin yet by his surviving
a short time and dying in Michigan a cause of action
arose in this State under our survival act.    In each
of those cases the deceased had survived for a time
and brought an action for tort in another State but
died while it was pending.    The action was thereafter
revived in the name of a personal representative ap-
pointed in that jurisdiction and it was held that revival
of the action affected the remedy only which was
within the control of the State where the suit was
pending.    Here deceased had brought no action, and
there was none pending to be revived.

Whether a cause of action survives and may be
brought after death of the injured party depends upon
the law of the jurisdiction in which the cause of death
was inflicted, regardless of where death took place.
While such actions are transitory, if brought in an-
other jurisdiction than that in which the cause of death
was inflicted, the general rule is that substantive
matters relating to the right of action are governed
by the *lex loci delicti,* while purely remedial proceed-
ings, such as pleadings, practice, etc., are controlled
by the *lex fori.*    The subject is instructively discussed
at length in *Needham* v. *Railway Co.,* 38 Vt. 294,
and *O'Reilly* v. *Railroad Co.,* 16 R. I. 388 (17 Atl. 171,
906, 19 Atl. 244, 5 L. R. A. 364, 6 L. R. A. 719),
and the principles elaborated with abundant citation
of sustaining authority in 5 R. C. L. pp. 1036-1038.
In 8 R. C. L. pp. 736, 737, it is said:

"It is established by the overwhelming weight of
authority that the existence of a right of action for
wrongful death must be determined by the law of the
place where the fatal injury was inflicted and if that
law gives no right of action, none can be maintained,
although the statute of the forum gives such a right.

\* \* \* It is also the rule that in enforcing a cause of action for death the court is to be governed by the *lex loci* rather than the *lex fori* with reference to all matters pertaining to the substantive right, including not only the right to recover, the nature of the right, and the party in whom it is vested, but defenses to the action, the measure and elements of damages, and the amount of recovery. It has been held that the question whether a statutory cause of action for death survives the death of the person for whose benefit it was originally given is one of right, and not of procedure, and is therefore governed by the statutes of the State giving the right of action. The question of whether a cause of action for injuries survives the death of the injured person is also usually held to be a matter going to the substantive right rather than to the remedy and to depend therefore on the *lex loci*, and not on the *lex fori.*"

Coming more directly to the question raised here, the following statement appears in the footnotes to *Boston & Maine R. Co.* v. *Hurd*, 108 Fed. 116, as reported in 56 L. R. A. at p. 218:

"It is also well established that if the injury occurs in one State, and death results therefrom in another, the cause of action is regarded as having arisen in the former State, and is therefore governed by its laws;" citing numerous authorities.

Examination of the many cases cited in support of those excerpts shows defendants' contention well sustained by the great weight of authority.

Neither the pleadings nor proofs in this case sustain the theory upon which the case was entertained by the trial court and submitted to the jury.

It is therefore reversed and a new trial granted, with costs to defendants.

SHARPE, C. J., and BIRD, SNOW, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.