GRIGGS *v.* GRIGGS.

DAVIS *v.* SAME.

1. NEGLIGENCE—PROXIMATE CAUSE—LEX LOCI.
   The law of the place where automobile accident occurred controls determination of issue of proximate cause.

2. AUTOMOBILES—RESPONSIBILITY OF OPERATOR.
   Every operator of a motor vehicle is responsible for safe and prudent operation of his vehicle and may not, by agreement or otherwise, shift responsibility for safe operation to another.

3. SAME—HIGHWAY SIGNS.
   The operator of a motor vehicle is responsible in law for seeing what, by care and prudence, there was to be seen upon the highway, such as highway signs indicating curves and lines indicating center of 2-lane highway that are placed for the safety and convenience of the traveling public.

4. SAME—ONTARIO—FOG BANK.
   Operator of car approaching a fog bank in province of Ontario is obliged so to drive that he will be able to discover the exact nature and character of the fog bank and, if need be, bring his car to a stop.

5. SAME—FOG BANK—ONTARIO—SPEED—CAUSA CAUSANS.
   Plaintiff operator who accelerated his car when sight of defendant's preceding car was lost in fog bank in province of Ontario *held*, as a matter of law under Ontario decisions to have provided the *causa causans* of the accident, since a clear

---

REFERENCES FOR POINTS IN HEADNOTES

[1]  16 Am Jur 2d, Conflict of Laws § 71.
[2]  8 Am Jur 2d, Automobiles and Highway Traffic § 560.
[3, 4]  7 Am Jur 2d, Automobiles and Highway Traffic §§ 353, 355.
[5]  7 Am Jur 2d, Automobiles and Highway Traffic § 369 *et seq.*
[6]  8 Am Jur 2d, Automobiles and Highway Traffic § 667 *et seq.*
  Negligence of driver of automobile as imputable to passenger. 90 ALR 630, 123 ALR 1171.

line could be drawn between the negligence of plaintiff operator and claimed negligence of defendant who was to precede plaintiffs in trip from Detroit to Buffalo, New York.

6. SAME—ONTARIO—IMPUTED NEGLIGENCE—PASSENGER.

Plaintiff and his passengers or their personal representatives were barred from recovering from defendant motorist, for injuries sustained in accident in Ontario as plaintiff followed defendant over a cliff, on a trip through the province of Ontario, where it is determined that plaintiff operator's negligence was the *causa causans* of the accident, his negligence being imputable to his passengers under Ontario law (3 Ont R S 1960, ch 261).

Appeal from Wayne; Bowles (George E.), J. Submitted May 7, 1964. (Calendar Nos. 70–74, Docket Nos. 50,094–50,098.) Decided January 4, 1965.

Declaration by Owen Griggs; Alice Griggs, administratrix of the estate of George Griggs; Emma Ruth Griggs, administratrix of the estate of George Griggs, Jr.; Leora Griggs, administratrix of the estate of Leon Griggs; and Emery J. Davis against Maceo Griggs for injuries allegedly arising from an automobile accident. Verdict and judgment for defendant. Motion for new trial denied. Plaintiffs appeal. Affirmed.

*Irving M. Stahl* (*Ronald M. Rothstein* and *Robert A. Karbel,* of counsel) for plaintiffs.

*William J. McBrearty,* for defendant.

SMITH, J. The jury rendered a no cause verdict in the case of each of the five plaintiffs. From an order denying new trial, plaintiffs have appealed. In a written opinion giving his reasons for denying a new trial, the learned circuit judge conceded that one of the special questions propounded by him to the jury was erroneous in that it contained a "mixed

law and fact proposition." Plaintiffs had argued this as one of several grounds for new trial. Despite the erroneous instruction, the circuit judge held that plaintiffs were not entitled to a new trial because under the Ontario law,[1] plaintiff Owen Griggs had "supplied the causal negligence out of which the accident grew, and that this negligence was a new or intervening cause, even assuming a duty and breach of duty by Maceo Griggs," defendant. Viewing this, then, as an issue of proximate cause under Ontario law, the trial judge concluded that plaintiffs had not been entitled to go to the jury anyway, and therefore he denied the motion for new trial.[2]

Two carloads of people set out in tandem on the night of July 4–5, 1958, to go from Detroit to Buffalo, New York, via the Ontario peninsula. They were going to Buffalo to a funeral of a deceased relative. However, the destination was never reached because both cars failed to negotiate a curve in the highway some miles east of St. Thomas, Ontario, and, one after the other, plunged over an embankment with one car coming to rest, bottom side up, on top of the other. The cars were demolished, killing and injuring occupants in both.

The first or lead car was owned and driven by defendant, Maceo Griggs. The second car was owned and driven by plaintiff, Owen Griggs. Other plaintiffs are administratrices of three passengers in the second car who died in the crash, and a fourth passenger, Emery Davis, who was injured but survived.

It was plaintiffs' theory that before the parties left Detroit, defendant Maceo told plaintiff Owen that he, defendant, would lead and Owen would fol-

---

[1] Ontario law governs: *Wingert* v. *Circuit Judge*, 101 Mich 395; *Turner* v. *St. Clair Tunnel Co.*, 111 Mich 578 (36 LRA 134, 66 Am St Rep 397); *Rick* v. *Saginaw Bay Towing Co.*, 132 Mich 237 (102 Am St Rep 422, 13 Am Neg Rep 342).

[2] See *Jonescu* v. *Orlich*, 220 Mich 89, 93.

low, and, it was alleged, that defendant "then and there assumed the role and responsibility of leading and directing" plaintiff in the operation of his automobile. It was asserted that defendant had a duty "to exercise and perform the role undertaken by defendant of leading and directing" plaintiff in a careful and prudent manner. Defendant allegedly breached this duty in a number of ways; of principal reliance by plaintiffs, after all proofs were in, was that defendant breached his duty by operating his car in disregard of curve signs and thereby failed to negotiate a curve in the highway. In so leaving the highway and plunging down an embankment, defendant is said to have thereby drawn, led, or directed plaintiff into following a similar course.

Defendant answers by admitting he drove off the highway and down an embankment, but denies that he either drew, led, or directed plaintiff Owen Griggs to follow. Defendant says that when Owen left the highway it was because he failed to see what there was to be seen, and by failing to control his car was author of his own injuries and that of the other plaintiffs.

Insofar as review-pertinent proofs are concerned, we center upon testimony of the second-car survivors, Owen Griggs and Emery Davis. They describe first-car (defendant's) movements immediately prior to the accident, and those of plaintiff Owen Griggs. The following is Owen's testimony on direct examination:

"*A.* After we left St. Thomas I was still following Maceo and we were traveling along and we run into these pockets of fog, you could see Maceo's car when it would go into them and then after we would get into it you could see his car further down the road then. It would just be a pocket of fog. You were right in it and right out. *The last pocket of fog I remember I saw his car when it went into it*

*and the way it looked his taillights, he was either
going around a corner, the way they went out of
sight or either going over a hill. So, for a minute
I started to mash down on my accelerator, maybe
I did.* Something seemed to tell me to be careful
and at that time I hit my brakes. I hit my brakes
going into it and my cousin Emery he hollered,
'Owen, watch out' and at that time I slapped on my
brakes but the car wouldn't turn. I could see the
curve where the road was curving. I could see
where the road was curving and the car wouldn't
turn, it kept right straight off and hit the soft
shoulder on the left and kicking gravel and stuff up.
I could hear it coming under the fender of the car
and the next thing I know the car was going over a
cliff and that is it." (Emphasis supplied.)

On cross-examination, Owen Griggs testified as follows:

"*Q. Let's put it this way: you were following
Maceo's taillights, is that right?*
"*A. That is correct.*
"*Q. I understand that Maceo disappeared in a
fog?*
"*A. That is correct.*
"*Q.* And you were still out of this fog?
"*A.* Yes.
"*Q.* He was in the fog and you were out of the
fog, correct?
"*A.* That's correct.
"*Q.* You could no longer see Maceo?
"*A.* No, I couldn't.
"*Q. And you didn't know whether Maceo had gone
around a curve or hadn't?*
"*A. That's right.*
"*Q.* And you didn't know whether Maceo had gone
over a hill or hadn't?
"*A.* That's right.
"*Q.* You didn't know whether he had gone off the
road or he hadn't?
"*A.* That's right.

"*Q.* As soon as he disappeared you were 75 to 100 feet ahead of him, is that correct?

"*A.* No. Wait.

"*Q.* I'm sorry. Behind him. *He was 75 or 100 feet ahead of you, and as soon as he disappeared, being ahead of you, you accelerated your speed, is that correct?*

"*A. Yes; instinct prompted me to mash the accelerator.* \* \* \*

"*Q. You couldn't see anything?*

"*A. No, I couldn't.*

"*Q.* You were driving blind?

"*A.* I wasn't driving blind.

"*Q.* You couldn't see in this fog?

"*A.* No, I couldn't see in the fog but I wasn't in the fog. I was approaching the fog.

"*Q.* Well, you couldn't see anything in this fog, could you?

"*A.* No, I couldn't.

"*Q.* So you were driving into what you might say is a blind area, correct?

"*A.* That is correct.

"*Q.* You are going into it yourself?

"*A.* Yes.

"*Q.* Instead of slowing down as you are going into this blind area you decide to speed it up, is that correct?

"*A.* I was slowing down when I was going into the fog.

"*Q.* No, no, first of all, Owen, before, as soon as you saw them disappear, let's put it this way: You wanted to stay close to him?

"*A.* Yes, I wanted to keep my distance.

"*Q. When he disappeared in order to catch him you stepped on the accelerator, is that correct?*

"*A. I mashed the accelerator.*

"*Q.* Mashed the accelerator which means you speeded up your car.

"*A. Accelerated it up.*

"*Q.* You were going 50—to what degree did you mash your accelerator, five miles more would you say?

"*A.* It would be up about five miles more." (Emphasis supplied.)

Plaintiff, Emery Davis, who was riding in the front seat with Owen Griggs testified on direct as follows:

"*A.* Well, as I noticed, as he stated we had been keeping close together and in the fog *we were watching Maceo's taillights trying not to let the distance become too great between us. I noticed that Maceo's taillights went out of sight. So I set up and at that time Owen increased his speed a little bit.*" (Emphasis supplied.)

Judge Bowles appraised plaintiffs' testimony this way:

"I have reviewed the entire matter, considering plaintiffs' proofs by most favorable view on the question of proximate cause. It was the testimony of Owen Griggs that Maceo Griggs' car disappeared in the fog and that he, Owen Griggs, increased his speed. As it developed, both drivers missed a curve and went over the bank. *Since Owen could not see the taillights of Maceo's car, by his own testimony; and, therefore, increased his speed despite the fog, the action of Maceo in missing the curve could not have caused Owen to miss the curve in fact and law.* This is assuming that there was a legal duty owing to plaintiff and a breach of that duty by defendant." (Emphasis supplied.)

We think the trial judge concluded correctly. Assuming a duty on the part of defendant to lead and direct plaintiff Owen, we have found no provincial or dominion authority which would excuse plaintiff driver from obedience to all statutes, rules, and decisions governing highway traffic control. If there

were, it is doubtful if such would be honored in this forum. Every operator of a motor vehicle is responsible for safe and prudent operation of his vehicle. He may not, by agreement or otherwise, shift responsibility for safe operation to another.

Plaintiff Owen Griggs was, therefore, responsible in law for seeing what, by care and prudence, there was to be seen upon the highway. Testimony was that there was an arrow sign indicating a curve in the highway and also a large checkerboard sign at the head of the curve indicating danger. The latter is seen from photographic exhibits, as are lines delineating the center of the two-lane highway. These traffic control devices undoubtedly were placed in position for the safety and convenience of the traveling public. Plaintiff Owen says he did not see the curve warning signs. If he seeks excuse because of the fog bank, then his conduct was proscribed in the Ontario case of *Wilson* v. *Terminal Warehouses Limited and Burns,* [1950] OntWN 323. In that case a large truck was traveling at a speed of 30 to 35 miles per hour. The driver saw a fog bank on the highway 200 feet ahead. Proceeding into the fog bank, the truck struck a car. A trial court jury found for defendant truck driver and the Ontario court of appeal reversed.[3] The court said that any motorist "seeing this condition on the highway, should at once have slackened his speed and thereafter had his truck or car under such control that he could, when he was able to discover by getting closer the exact nature and character of this fog bank, if needs be, bring his vehicle to a stop."

Another important case on the problem of causation under the automobile negligence law of Ontario was decided in the supreme court of Canada. In the

[3] New trial was ordered mainly because of an instruction not pertinent to our inquiry, i. e., lack of clarity on the question of what constituted an inevitable or unavoidable accident.

case of *Brooks* v. *Ward and the Queen,* [1956] 4 DLR2d 597, appellant had left his truck standing on the highway while making a business call in an adjacent building. Respondent tried to pass appellant's truck and collided with a third car approaching from the opposite direction. Under the comparative negligence law of Ontario, appellant was assessed a portion of the damages.

Appellant contended on appeal that even if his truck was standing on the highway, "this statutory breach of the law does not constitute effective negligence, and was not the *causa causans* of the accident." (*Causa causans* is defined as the immediate cause.)

The court ruled with appellant finding that respondent *"could and should have seen the taillights"* of appellant's truck. Writing for the court, Justice Taschereau said:

"I do not believe that the appellant can be charged with negligence which contributed to the accident. In the case of *McKee & Taylor* v. *Malenfant* [1954], 4 DLR 785 at p 788, SCR 651 at p 655, it was held by the majority of the Court that *where a clear line can be drawn between the negligence of plaintiff and defendant, it is not a case of contributory negligence at all.* When a driver sees a car in his path, and has plenty of opportunity to avoid it but fails to do so, there is no contributory negligence and he must bear the full responsibility. Or if, by his own negligence, he disables himself from becoming aware of a danger and cannot therefore avoid the accident, he is the only party to blame: *Sigurdson* v. *B.C. Elect. R. Co.,* [1952] 4 DLR 1 at p 9, 69 CRTC 149 at p 157 [1953] AC 291 at p 302." (Emphasis supplied.)

In addition, therefore, to being chargeable with knowledge of and obedience to highway signs and markings, plaintiff Owen Griggs was also chargeable with the duty of slackening his speed as he

approached the fog bank and being able to stop "if needs be." Upon the disappearance of the taillights of defendant Maceo's car, plaintiff Owen, instead of slowing down and being able to stop, accelerated his car, contrary to Ontario rule. Even if we assume a duty and breach, as plaintiffs contend for, we must conclude as a matter of law that plaintiff Owen Griggs provided the *causa causans* of the accident, under provincial decisions for the reason that a clear line can be drawn between the negligence of plaintiff and claimed negligence of defendant.

Under such circumstances there is no occasion to attempt to apportion negligence and damages under the comparative negligence law of Ontario. *Brooks v. Ward and the Queen, supra.* Since the negligence of plaintiff Owen Griggs is found to be the *causa causans* of the accident, his passengers or their personal representatives are also barred from recovery because his negligence is imputed to them under Ontario law. 3 Revised Statutes of Ontario, 1960, chap 261.

Affirmed. Costs to appellee.

KAVANAGH, C. J., and DETHMERS, KELLY, BLACK, SOURIS, O'HARA, and ADAMS, JJ., concurred.