**Rossie HILBURN and Linda Hilburn, Co–Administrators of the Estate of Darryl Wayne Hilburn, Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION, a foreign corporation, Defendant.**

No. 96–CV–71386–DT.

United States District Court, E.D. Michigan, Southern Division.

Jan. 14, 1997.

Philip E. Chaffee, Detroit, MI, for Plaintiffs.

Kevin Bonner, Detroit, MI, David P. Kamp, Cincinnati, OH, Michael P. Cooney, Bloomfield Hills, MI, for Defendant.

### JUDGMENT

JULIAN ABELE COOK, Jr., District Judge.

On January 14, 1997, the Court granted a summary judgment in the above-entitled cause. Accordingly, a judgment shall be entered in favor of the Defendant, General Motors Corporation, and against the Plaintiffs, Rossie Hilburn and Linda Hilburn.

IT IS SO ORDERED.

### ORDER

On September 12, 1996, the Defendant, General Motors Corporation (GM), filed an amended motion for summary judgment pursuant to Fed.R.Civ.P. 56.[1] The Plaintiffs, Rossie Hilburn and Linda Hilburn,[2] filed opposition papers on October 21, 1996. At the conclusion of the hearing on November 5,

---

1. The original motion for summary judgment was filed on September 10, 1996.

2. The Plaintiffs are co-administrators of the estate of Darryl Wayne Hilburn.

1996, the Court took the issues in controversy under advisement.

For the reasons that have been stated below, GM's motion is granted.

## I

In this lawsuit, the Plaintiffs seek to obtain damages from GM whom they contend caused the death of Darryl Wayne Hilburn, who died in an automobile accident in North Carolina[3]. On June 11, 1994, the Plaintiffs' decedent was driving a 1989 Chevrolet pickup truck in a westerly direction on U.S. Highway 74 in Columbus County, North Carolina when he collided with a 1977 Chevrolet pickup truck that had been operated in an easterly direction by Henry Lambert. Mr. Hilburn died shortly thereafter as a result of the injuries, which the Plaintiffs attribute to the accident.

The Plaintiffs, as well as their decedent, were all North Carolina residents at the time of the accident. GM is headquartered in Detroit, Michigan, but has extensive business operations in North Carolina.

In its motion, GM asserts that the Plaintiffs' action is barred by the North Carolina's product liability statute of repose, N.C. Gen. Star. § 1–50(6), which provides:

[N]o actions for recovery of damages for personal injury, death or damage to property based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than six years after the date of initial purchase for use or consumption.

GM points out that the 1977 Chevrolet pickup truck, which the Plaintiffs claim had been defectively designed, was initially sold to a North Carolina resident (not Lambert) in November 1976. Thus, GM asserts that the Plaintiffs' claims relating to alleged defects in the fuel system of the 1977 Chevrolet pickup truck are time-barred according to the above-cited North Carolina statute of repose. The Plaintiffs concede that this North Carolina statute would bar their cause of action if the Court determines that it is applicable to the facts in this case.

As an alternative form of relief, GM argues that Michigan's "borrowing statute," Mich. Comp. Laws Ann. § 600.5861, requires this Court to borrow North Carolina's statute of repose. Mich. Comp. Laws Ann. § 600.5861 provides in pertinent part:

An action based upon a cause of action accruing without this state shall not be commenced after the expiration of the statute of limitations of either this state or the place without the state where the cause of action accrued....

In their opposition papers, the Plaintiffs generally contend that (1) their cause of action is governed by Michigan law, and (2) the law of North Carolina is not applicable to the facts in this case.

## II

Under Rule 56 of the Federal Rules of Civil Procedure, a summary judgment is to be entered if the moving party demonstrates that the absence of all genuine issues of material fact, and if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This "burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). In making this evaluation, the court is authorized to examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the non-moving party. *Boyd v. Ford Motor Company,* 948 F.2d 283 (6th Cir.1991). If this burden is met by the moving party, the failure of the non-moving party to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial...." will mandate the entry of

---

**3.** The Plaintiffs' seek damages under the following theories: (1) negligence in the design of the fuel tank system on the 1977 Chevrolet pickup truck; (2) breach of an implied warranty; (3) willful and intentional misconduct; (4) strict product liability; and (5) fraudulent concealment.

summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

### A

■ In diversity actions, federal courts must apply the choice of law rules of the state in which the court sits. *Klaxon v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Colonial Refrigerated Transportation, Inc. v. Worsham,* 705 F.2d 821, 825 (6th Cir.1983); *Mahne v. Ford Motor Co.,* 900 F.2d 83, 85 (6th Cir.1990). Hence, this Court must apply Michigan's choice of law rules.

In tort actions, the Michigan Supreme Court has adopted "no specific methodology" in which to resolve conflicts of law, and "each case must be evaluated on the circumstances presented." *In re Disaster,* 86 F.3d 498, 540 (1996) (citing *Olmstead v. Anderson,* 428 Mich. 1, 400 N.W.2d 292 (1987)). On the other hand, Michigan decisions have "clearly established that a court must have a rational reason to justify displacing the law of the forum [i.e., Michigan], lex fori, in favor of a foreign law [in this instance, North Carolina]." *Id.* (citing *Olmstead,* 400 N.W.2d at 302; *Farrell v. Ford Motor Co.,* 199 Mich. App. 81, 501 N.W.2d 567, 569 (1993); *Mahne v. Ford Motor Co.,* 900 F.2d 83, 86–87 (6th Cir.), cert. denied, 498 U.S. 941, 111 S.Ct. 349, 112 L.Ed.2d 313 (1990)); *See also Isley v. Capuchin Province, et al.,* 878 F.Supp. 1021, 1023–1025 (E.D.Mi.1995). A majority of the courts that applied Michigan's choice of law rules have utilized a "balancing-of-interests" approach to resolve conflicts problems. *Id.; See, e.g., Isley v. Capuchin Province, et al.,* 878 F.Supp. at 1023–1024. However, if there is no reason to apply the law of the foreign state, there is no need to balance the respective state interests. *Olmstead,* 400 N.W.2d at 305.

The parties do not agree about whether *Farrell v. Ford Motor Co.* 199 Mich.App. 81, 501 N.W.2d 567, 569 (1993) or *Mahne v. Ford Motor Co.,* 900 F.2d 83, 86–87 (6th Cir.), cert. denied, 498 U.S. 941, 111 S.Ct. 349, 112 L.Ed.2d 313 (1990), governs the disposition of this motion.[4] These two cases are factually similar. Both cases dealt with (1) contested products liability issues which involved out-of-state plaintiffs and a Michigan-based corporate defendant, and (2) pertained to accidents that had occurred in the state where the plaintiff resided. Despite the factual similarity, the Sixth Circuit Court of Appeals (Sixth Circuit) and the Michigan Court of Appeals reached different conclusions. The Sixth Circuit concluded that the foreign state (Florida) had no interest in having its law applied to a Michigan manufacturer, even though the Plaintiff was a Florida resident.[5] In *Farrell,* the Michigan Court of Appeals criticized the decision in *Mahne* and determined that the foreign state (North Carolina) had a substantial interest in having its law applied. Despite having reached different results on similar facts, the courts in *Farrell* and *Mahne* adhered to the ruling by the Michigan Supreme Court in *Olmstead* (namely, that a rational reason must exist before a foreign law can be deemed to supersede Michigan law). *Mahne,* 900 F.2d 83 at 85–86; *Farrell,* 501

---

**4.** The task of this Court is to apply the law of the state of Michigan in accordance with the decision of the state's highest court. *Monette v. AM–7–7 Baking, Co., Ltd.,* 929 F.2d 276 (6th Cir. 1991). If the state's highest court has not ruled on the issue, the Court must "ascertain from all available data, including the decisional law of the states's lower courts, restatements of law, law review commentaries, and decisions from other jurisdictions on the 'majority' rule, what the state's highest court would decide if faced with the issue." *Id.* However, the opinion of a state intermediate appellate court should not be disregarded unless "the federal court is convinced by other persuasive data that the highest state court would decide otherwise." *Id.*

**5.** In *Mahne,* the Sixth Circuit concluded that the Florida statute of repose was intended to apply solely to those defendants who operated manufacturing facilities within the borders of the State of Florida. Thus, the Defendant, Ford Motor Company, could not benefit from Florida's statute of repose. In support of its conclusion, the Sixth Court relied upon a student-authored law review note.

In the case at bar, GM correctly points out that the note, upon which the Sixth Circuit relied, is questionable authority inasmuch as it did not make any distinction between in-state manufacturers and out-of-state manufacturers.

N.W.2d 567 at 569–571; *See Isley v. Capuchin Province, et al.,* 878 F.Supp. at 1023.

■ In the case before this Court, the facts support the conclusion that North Carolina has a substantial interest in having its laws applied to the Plaintiffs' claims against GM. The Court agrees with the reasoning of the Michigan Court of Appeals in *Farrell.*[6] *Farrell,* like the case at bar, involved a determination of whether the North Carolina's statute of repose applied to the Plaintiff's product liability action against Ford Motor Company. The court concluded that "North Carolina has a obvious and substantial interest in shielding Ford from open-ended products liability claims." *Farrell,* 501 N.W.2d at 572. In reaching its conclusion, the court considered the substantial business dealing of Ford Motor Company with North Carolina residents. The court noted that "North Carolina [has] a substantial interest in encouraging more commercial activity and in affording defendant the protection provided by [North Carolina's] statute of repose." *Id.*

Similarly, GM has submitted documentary evidence which attested to its substantial business interests in North Carolina. (Deft. Br. at Exhibit 2, Daniel R. Stocker Affidavit).[7] On the other hand, Michigan is merely the situs of GM's headquarters and the state in which the Plaintiffs' complaint was filed. The court in *Farrell* observed that such interests are insufficient to justify the application of Michigan law.

On the basis of the operative facts in the record, this Court finds that the laws of North Carolina are applicable here and the plaintiffs' action is barred under that state's statute of repose.

**B**

Inasmuch as the North Carolina statute of repose bars the Plaintiffs' cause of action, the Court need not address GM's contention that the Michigan "borrowing" statute (to wit, Mich. Comp. Laws Ann. § 600.5861; Mich. Stat. Ann. § 27A.5861) requires the borrowing of North Carolina's statute of repose.

**III**

Accordingly, GM's motion for summary judgment is granted. This represents a final order in this controversy.

IT IS SO ORDERED.

---

**6.** The Plaintiffs criticize the *Farrell* decision, arguing that the Michigan court did not consider the legislative intent behind North Carolina's statute of repose. They rely upon *Boudreau v. Baughman,* 86 N.C.App. 165, 356 S.E.2d 907 (1987), *rev'd on other grounds,* 322 N.C. 331, 368 S.E.2d 849 (1988), in asserting that the legislative intent behind the challenged statute of repose was to protect North Carolina manufacturers and the courts from stale claims. In *Boudreau,* a Massachusetts' resident brought a lawsuit against a North Carolina manufacturer, seeking damages which arose from an injury that occurred in Florida. In their respective opinions, neither the North Carolina Court of Appeals nor the state Supreme Court addressed the legislative intent behind the repose statute, i.e., whether it is restricted to resident manufacturers.

Indeed, the North Carolina Court of Appeals in applying the repose statute merely noted the state's policy to "protect North Carolina manufacturers and designers as well as the North Carolina courts from stale claims ..." *Id.* 356 S.E.2d at 911. This observation does not have broad import inasmuch as the court was not presented with the issue of whether the statute is limited to resident manufacturers.

**7.** GM has a significant interest in the Volvo–GM Heavy Duty Truck Corporation and does business with over 400 North Carolina suppliers. Moreover, GM vehicles accounted for approximately 33% of all new cars and 28% of all new trucks sold in North Carolina in 1995. (Deft. Br. at Exhibit 2).